IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **CARMEN MARITZA NIEVES ARCE; JOSE PERTIERRA AND THE COMMON LAW MARRIAGE COMPOSED BETWEEN THEM**<br><br>Plaintiffs,<br><br>vs.<br><br>**BANCO POPULAR DE PUERTO RICO, INC.; ABC INSURANCE COMPANIES, DEF UNKNOWN DEFENDANTS**<br><br>Defendants. | CIVIL NO.<br><br>RE: TITLE VII; ADA; GENDER AND DISABILITY DISCRIMINATION; HOSTILE WORKING ENVIRONMENT; RETALIATION; FAILURE TO PROVIDE REASONABLE ACCOMMODATION; BREACH OF PRIVACY, UNLAWFUL TERMINATION.<br><br>REQUEST FOR SUMMARY PROCEEDINGS UNDER 42 U.S.C. § 2000e-5(f)(5)<br><br>PLAINTIFFS DEMAND TRIAL BY JURY AND PUNITIVE DAMAGES |

# C O M P L A I N T

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Carmen Martiza Nieves Arce ("Nieves"), her husband José Pertierra ("Pertierra") and the common law marriage composed between them, through their undersigned counsel and very respectfully **ALLEGE, SOLICIT** and **PRAY**:

### I. NATURE OF THE ACTION AND JURISDICTION

1. Plaintiffs invoke this Honorable Court's federal question subject matter jurisdiction under 28 U.S.C. § 1331 for this action seeking compensatory damages, equitable and injunctive relief, costs and attorney's fees brought forth pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the American with Disabilities Act of 1900, 42 U.S.C. §§ 12101 *et. seq.* ("ADA") and the Age Discrimination in Employment Act of 1967, 29 U.S.C.

§§ 621-634 as a result of Defendant Banco Popular of Puerto Rico, Inc.'s ("Banco Popular" or "the Bank") continuous unlawful and willful unlawful employment practices (gender, age disability discrimination, hostile work environment, failure to accommodate a disability and retaliation), which lead to multiple continuous violations of Nieves' civil rights due to her age, gender, disability and retaliation because she engaged in several statutorily protected activities under Title VII, ADEA, ADA and Puerto Rico's employment laws grieving about her terms and conditions of employment. Banco Popular further violated Nieves' constitutional rights to her privacy, dignity and to work in a safe workplace free from risks to her health or personal integrity.

2. The Bank's violations of Nieves' civil rights culminated in her illegal termination of employment. Such unlawful discriminatory and retaliatory employment practices caused severe emotional, mental, and economic damages to both Plaintiff Nieves and her common law husband, Plaintiff Pertierra.

3. Plaintiffs further invoke this Honorable Court's supplemental jurisdiction under 28 U.S.C. § 1367 to hear and decide those claims arising under the Commonwealth of Puerto Rico laws invoked herein because such claims arise from the same nucleus of operative facts giving rise to Nieves' claims under the stated federal employment discrimination laws.

4. Plaintiffs also assert the Honorable Court's supplemental and pendent party jurisdiction to hear and adjudicate their claims against all named party defendants arising under the following Puerto Rico Laws: Act No. 115 of December 20, 1991, 29 L.P.R.A. §§ 194 *et seq.*, as amended; Act No. 100 of June 30, 1959, 29 L.P.R.A. §§ 146, *et seq.*, as amended; Act 80 of May 30, 1976, 29 L.P.R.A. §§ 185a-185, as amended; Act No. 69 of July 6, 1985, 29 L.P.R.A. §§ 1321 *et seq.*, as amended,; Act No. 44 of July 2, 1985, 1 L.P.R.A. §§ 1 *et seq,* as amended;

Article II, Sections 1, 8, and 16 of the Commonwealth of Puerto Rico's Constitution and Articles 1536, 1540 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 10801, 10805 (2020).

5. On or about July 31, 2024, Nieves timely filed an Employment Discrimination and Retaliation Charge with the U.S. Equal Employment Opportunity Commission ("EEOC"), Case No. 515-2024-00468, claiming gender and disability discrimination, hostile working environment, failure to reasonably accommodate a disability, retaliation and unlawful termination of her employment against her former employer, Banco Popular.

6. On January 17, 2025, the EEOC issued and notified its Dismissal and Notice of Right-to-Sue so that Nieves could continue to pursue her employment discrimination and retaliation claims before this Honorable Court. Such Notice of Right-To-Sue was received by Nieves on January 17, 2025.

7. In a timely manner after receipt of the above-mentioned Right-To-Sue Notice, Plaintiffs file the present federal lawsuit claiming violations to Title VII, ADEA, ADA and the Commonwealth of Puerto Rico's Constitution and laws cited too herein.

8. Nieves seeks redress for the damages she suffered and continues to suffer as a result of Banco Popular's continuous unlawful employment discrimination on the basis of her gender, age, disability and for retaliation because she engaged in various statutorily protected activities by opposing unlawful employment practices, among others, described herein below.

9. Plaintiff Pertierra's tort claims are "wholly derivative [from his Nieves' discrimination and retaliation claims] and, thus, [their] viability is contingent upon the viability of the underlying employment discrimination claims." *Costa-Urena v. Segarra*, 590 F.3d 18, 30 (1st Cir. 2009) (quotation omitted*); accord Marcano-Rivera v. Pueblo Int'l*., *Inc.* 232 F.3d 245, 258, n.7 (1st Cir. 2000) (*citing Santini Rivera v. Serv. Air, Inc., 137 P.R. Dec. 1* (1994)).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) (1), (2). Venue is proper in this district because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this judicial district of Puerto Rico. 28 U.S.C. § 1391(b).

11. Nieves hereby specifically invokes 42 U.S.C. § 2000e-5(f)(5) to request that her Title VII claims in this case to be in every way expedited.

## II.  THE PARTIES

12. Nieves is a female citizen of the United States of America, of legal age, married and resident of San Juan, Puerto Rico. Nieves is the common law wife of Plaintiff Pertierra. As a female, Nieves is within Title VII's protected gender group.

13. Nieves was born on February 6, 1968. At the time of her unlawful and discriminatory termination of employment from the Bank, she was fifty-six (56) years old. As such, Nieves is within ADEA's protected age group.

14. At all relevant times alleged in this Complaint, Nieves is also a qualified individual with disabilities under the ADA, as she has medical disabilities, she was perceived as having medical disabilities and had a record of those impairments. Nieves suffers from severe depression and claustrophobia, which constitute impairments under the ADA.

15. Nieves was a qualified individual with disabilities under the ADA that could perform the essential job functions of her position of Office Clerk in the Bank's Mortgage Servicing Collateral Department, with or without reasonable accommodation. Nieves' disabilities affect her major life activities of working, walking, thinking, concentrating, interacting with other individuals, among other major life activities.

16. Alternatively, Nieves was perceived by Banco Popular and its agents to be disabled within the meaning of the ADA.

17. At all relevant times as alleged in this Complaint, Nieves was disabled as she suffered physical and mental impairments that substantially limit her major life activities; she has a record of such impairments and was regarded by Banco Popular and its agents as having such impairments. *See* 42 U.S.C. § 12102(1).

18. Plaintiff Pertierra is a male citizen of the United States of America, of legal age, married and resident of San Juan, Puerto Rico. Pertierra is Plaintiff Nieves' common law husband.

19. At all relevant times of the facts alleged in this Complaint, Nieves was an employee within Title VII's protected class.

20. At all the relevant times of the facts alleged in this Complaint, Nieves was an "employee" within the definition of such terms as defined by Title VII, 42 U.S.C. § 2000e(f), by the ADA, 42 U.S.C. § 12111(4), and by the ADEA, 29 U.S.C. § 630(b). Nieves was also an "employee" within the definition of such terms as provided by the Commonwealth of Puerto Rico's Constitution and laws that have been invoked herein.

21. Defendant Banco Popular is considered a "person" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e(a).

22. At all times relevant to this Complaint, Banco Popular was engaged in an "industry affecting commerce" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e (h).

23. At all times relevant to this Complaint, Banco Popular was also an "employer" within the meaning of such term as provided by Title VII, 42 U.S.C. § 2000e (b); by the ADEA,

29 U.S.C. § 630(b) by the ADA, 42 U.S.C. § 1211(5)(A); and by the laws of Puerto Rico that have been invoked herein.

24. At all times relevant to this Complaint, Banco Popular employed fifteen (15) or more employees.

25. At all times relevant to this Complaint, the Bank employed Plaintiff Nieves. As such, Banco Popular was Nieves' employer.

26. Defendants ABC Insurance Companies have insurance policies which at all times relevant hereto were in full effect and cover the liabilities and/or unlawful acts which were committed by Banco Popular.

27. Plaintiffs are using the fictitious names of ABC Insurance Companies because at this time they do not know the real names of such insurance companies. Once the real names become known, Plaintiffs will substitute those fictitious names with the real names of such party defendants.

28. Defendants DEF are other parties that have engaged in unlawful acts against Nieves and Pertierra. Plaintiffs are using the fictitious names of DEF because at this time they do not know the real names of such party defendants. Once the real names become known, Plaintiffs will substitute those fictitious names with the real names of such party defendants.

29. All defendants have received actual knowledge of Nieves' administrative charge filed with the EEOC, Case No. 515-2024-00468.

30. All Defendants and their agents have jointly participated in continuous acts of unlawful employment discrimination and retaliation against Nieves on account of her gender, age, disability and because Nieves engaged in statutorily protected activity by grieving, denouncing, opposing unlawful employment practices in gross violation of the Federal and

Puerto Rico laws cited too herein and by requesting reasonable accommodation for her disabilities.

31. All defendants are jointly liable for the damages caused to Plaintiffs Nieves and Pertierra.

### III.    FACTUAL NARRATIVE COMMON TO ALL CLAIMS

32. On March 7, 2016, Nieves commenced working full-time for Banco Popular after having previously worked at the Bank as a temporary employee with Caribbean Temporary Services ("CTS") since 2015. During her employment tenure with Banco Popular, she received positive job evaluations and was not subject to any disciplinary measures related to her work performance. Her assigned Employee Identification Number while at the Bank was PR51921.

33. As a result of her discriminatory work environment at Banco Popular, Nieves commenced psychiatric treatment with Dr. Jorge Sánchez. Upon Dr. Sánchez' retirement during 2018, Nieves started to seek medical treatment due to her severe depression with various mental health professionals, including, Dr. Arleen Rivera Mass, Dr. Amidcar Matos Irizarry and Dr. Janice Ramirez Lebrón. Nieves' depression condition was duly notified the Bank's personnel, including her immediate supervisors and its Human Resources Office.

34. Since September 25, 2018, Nieves has been a patient of Dr. Rivera Mass, a psychiatrist, due to Nieves' Depression diagnosis (F33.2) and has continued under Rivera Mass' treatment since such date until the present. As part of her medications, Nieves has been prescribed Celexa (40 mg.); Wellbultrin (300 mg.) Trazodone (100 mg.) and Klonopin (1.0 mg.).

35. On or about May 2, 2019, Dr. Rivera Mass issued a certificate attesting to the fact that Nieves suffered from Generalized Anxiety and Claustrophobia. These two health conditions are considered disabilities under the ADA. Through such Certificate, Dr. Rivera Mass

recommended that Nieves' assistance at events where large amounts of people were to be present in large o limited spaces be curtailed, and she further certified that Nieves could adequately perform her duties as a Bank employee. This Certificate was duly notified to the Bank's personnel and Nieves' supervisors.

36. Banco Popular has further had specific knowledge of Nieves' anxiety condition because during December 2018, she requested to be excused from attending a Christmas Party due to her health conditions. As a matter of fact, the Bank approved this specific request.

37. On another occasion during the month of May 2019, while Nieves was under Yariel Medina's supervision, he took several of the Bank employees that he supervised to a 3D movie of the "Avengers". Nieves requested to be excused from this event as she feels claustrophobic in theaters among so many people in the dark. Both Nieves' supervisor Marta Melendez and Yariel Medina, as area supervisor, excused Nieves from the movie event and agreed that it would be best if she remained at work.

38. As a result of Nieves' emotional conditions, on or about June 19, 2019, she requested a Family Medical Leave Act ("FMLA") license from Banco Popular. Nieves had also previously requested the Bank for FMLA intermittent leaves between July 1, 2018 and September 1, 2018. Due to her serious health conditions, Nieves was hospitalized at the Hospital Auxilio Mutuo in San Juan, Puerto Rico from September 20 to 21, 2020.

39. From 2019 until 2021, Nieves' depression exacerbated. During such period of time, she also suffered from musculoskeletal problems and received treatment at the Spine Sports Manual Medicine Clinic, Centro Físiatrico Domenech, Auxilio Mutuo Hospital and later with Puerto Rico's State Insurance Fund. All these conditions and corresponding treatments

were notified to Ms. Marta L. Melendez, Nieves' then immediate supervisor and to Banco Popular.

40. During 2019, after the retirement of Carlos Mendez, a Bank Manager, Nieves was placed under the supervision of Marta L. Melendez Morales, and her assistant, Vilmarie Hernandez Morales in the Collaterals Group, along with those employees assigned to the Archive and Legal Documents Division.

41. After the COVID-19 lockdown, Mrs. Melendez transferred Nieves to the Loss Mitigation Department located at the Centro Europa facility, in Santurce, Puerto Rico. On June 17, 2020, Nieves requested Yariel Medina to be returned to the Collaterals Department, but Mrs. Melendez instructed her that such transfer was impossible, and that it would only take place over her dead body. As a result, Nieves became emotionally distraught, and Mrs. Melendez belittled and began laughing at her. Nieves reproached Melendez' conduct while her supervisor deliberately denied that she had been laughing at her.

42. Melendez became distraught when Nieves informed her that Maria Fuster, a fellow similarly situated employee, had returned to the Collaterals Department due to health reasons. As a result of this situation, on September 20, 2020, Nieves suffered a severe emotional crisis, requiring her husband, Plaintiff José Pertierra, to take her to the Auxilio Mutuo Hospital. On the following day, Nieves was transferred to the Hospital Panamericano's unit at Auxilio Mutuo Hospital, and was later admitted to Hospital Panamericano, a psychiatric medical care institution, located in Cidra, Puerto Rico.

43. After being discharged from Hospital Panamericano, Banco Popular transferred Nieves to its Collaterals Department located in Altamira, Guaynabo under Yariel Medina's supervision.

44. During July 2021, Medina was reassigned, and Mr. Isander Berrios then became the Collaterals Department's Supervisor. Mr. Berrios would favor Nieves' fellow employees Jorge Abriles and Blanca Ortiz, who are younger, less senior than Nieves and are also non-disabled. Berrios further favored Maria Curet, who had less seniority than Nieves and not disabled. Isander Berrios assigned more work tasks to female employees as opposed as to other similar male coworkers, such as José Santos, Jan Rodríguez Rallat and Jorge Abriles.

45. During 2022, Jan Rodríguez Rallat commenced working as an Analyst in Nieves' work group. At that time, Rodríguez Rallat had no prior work experience, his job position was not posted nor was it internally offered. According to Jan Rodriguez, his mother and Marta Melendez had studied together. Supervisor Isander Berrios would instruct Jan Rodriguez to perform less complicated tasks than the rest of Nieves' work group and almost always Sharon Peña would end up doing his work.

46. After his appointment, Rodriguez Rallat created a sexually hostile working environment as he frequently commented that Isander Berrios was happy walking behind Krismarie Guadalupe so as to admire her buttocks and the rest of her body. Rodriguez Rallat further commented that Isander Berrios would also sit at his workplace with his legs spread wide open. Nieves was forced to deal with this disruptive and sexually hostile working environment, which made it difficult for her to concentrate on and perform her work responsibilities. As a result of having to work in this sexually hostile working environment, Nieves was prescribed rest by her psychiatrist Dr. Rivera Mass from September 7 to 13, 2022; on November 9, 2022; from February 22-24, 2023 and on April 26 and 27, 2023.

47. On February 22, 2023, because of her emotional conditions, Nieves continued treatment under Dr. Rivera Mass, who recommended rest from such date until February 24, 2023.

To such effect, Dr. Rivera Mass issued a Medical certificate dated February 22, 2023. On April 27, 2023, Nieves was again treated by Dr. Rivera Mass, and she again prescribed rest.

48. Supervisor Isander Berrios exhibited a disparate treatment towards Nieves when compared to her similarly situated male, younger and non-disabled co-workers at the workplace. During the month of July 2023, Mrs. Marta Melendez had instructed the employees not to use cellular phones at the work desks. However, Nieves' work group continued using their phones including Isander Berrios, who indicated to the employees that they could have their cellphones with their screens facing downward and in silent mode. On one occasion, Nieves received a phone call from her daughter, who was with Nieves' sick five (5) month old grandson.

49. As Nieves picked up the phone to answer, Mr. Berrios reprimanded her, when other similarly situated younger less senior non-disabled including male employees, had used their cellphones during work hours, including Berrios himself, and they were not reprimanded for their use.

50. During a meeting that followed involving the subject of cellular phone use, Nieves explained what had happened and Mr. Berrios falsely accused Nieves had been watching someone dancing on her cellular phone. Ms. Sharon Peña commented to Nieves that she did not understand Mr. Berrios' attitude towards her, when similarly situated work non-disabled colleagues, used their cellphones during working hours, but they had not been reprimanded.

51. On or about August 17, 2023, Mrs. Marta Melendez requested some of the Office Clerks personnel to report to work the next day to another area in order to put into envelopes some letters that Banco Popular had to send out to its clients. Nieves went to the assigned area and immediately felt anxious, due to her claustrophobia, as the assigned work area was very small in size. Because Nieves had many tasks to perform and due to her anxiety diagnosis, she

requested Mrs. Melendez that she be allowed to return to her regular work area to perform the work assigned related to the envelopes, but Mrs. Melendez unlawfully refused her reasonable accommodation request. Mr. Isander Berrios then, in a derogatory and demeaning fashion, ordered Nieves to go to Inspira, a psychiatric care institution for treatment.

52. Soon thereafter, Nieves phoned Banco Popular's "Nuestra Gente Division" (which is its Human Resources Department) to seek guidance about requesting reasonable accommodation due to her several health conditions. Nieves was then referred to the Bank's Labor Department where Mrs. Laura Rodriguez Pizarro advised her that she had to fill in certain questionnaire documents. Rodriguez Pizarro warned Nieves that she had to think this matter over very carefully, as it related to Nieves' position with the Bank and her terms and conditions of employment.

53. Mrs. Rodriguez warned Nieves that if she requested reasonable accommodation, she should keep in mind that this request could very well result in a change of her workplace location and that she could be positioned in a lower paying job classification, which caused a chilling effect on Nieves' intent to seek accommodation under both the ADA and Puerto Rico Act No. 44.

54. When Nieves returned to Marta Melendez, she informed Nieves that she had already been replaced in her task of placing letters into envelopes. Melendez further stated to Nieves for her to seek treatment, and that Nieves could not return to work until she had a fit-to-work determination from Nieves' treating psychiatrist. Melendez further warned Nieves that until she obtained such certification, she would not be allowed back to her work area at the Bank. Despite these instructions, Banco Popular did not send Nieves for its own fit-to-work evaluation by a physician of its choice.

55. As Nieves departed the Altamira building and was in its parking area, she suffered a severe anxiety attack while attempting to contact her psychiatrist. Banco Popular's unlawful employment practice forced Nieves to be out of work out on sick leave until her psychiatrist returned to her office, so as to be able to provide the Bank with the requested certification.

56. While Nieves was home on leave for treatment, a work colleague named Juleidka, called her to inform that Marta Melendez had been yelling at work stating that she knew very well "what Nieves was trying to do to her." Following this phone conversation, Nieves once again called the Bank's Labor Department attempting to report back to work and grieved that she was being retaliated against. However, Nieves' internal grievance was wrongfully set a side and dismissed as being merely hallway gossip.

57. During the month of January 2024, Nieves' co-worker Jan Rodriguez, who is a jocular individual, approached Nieves to see what she was working on. As this conduct affected Nieves' work, she requested from him to walk away so she could continue her work. During the month of June 2024, while Nieves was scanning several documents in an office used for such purpose, which is distraction free area, she heard a loud noise when Jan Rodriguez tossed many documents and other things on top of a nearby table, causing Nieves to become startled and frightened. Nieves then politely asked Rodríguez to allow her to finish her work and to return later. As Rodriguez did not take Nieves seriously, she stated to him that his conduct was not welcomed.

58. During the month of May 2024, Nieves requested her immediate supervisor, Isander Berrios, to be able to remain at her work desk during her lunch period because she was not feeling well. Berrios acquiesced to her request. Nieves subsequently fell deeply asleep and was suddenly awakened by Berrios who was standing over her and repeatedly yelling if she was

OK. Nieves has been the victim of disparate work discipline treatment by the Bank's agents when a similarly situated male coworker, Jorge Abriles, had fallen asleep during work hours, however he was not reprimanded or even counseled for his conduct. Sharon Peña further admitted to Nieves that Isander Berrios had woken her up just to annoy her.

59. On June 12, 2024, Nieves submitted all the required paperwork in order to add her husband, Jose Pertierra, to be covered under Banco Popular's employee group health plan. Nieves' request was duly approved by the Bank.

60. On June 28, 2024, when Nieves arrived at work she noticed that her coworker's (Alondra) desk had also been removed from their work area. Berrios further advised Nieves that he needed to meet with her and Jacqueline Peña, the Call Center's Supervisor. Nieves then asked Berrios if she could call Yariel Medina so he could participate in such meeting, but her request was summarily denied.

61. During the stated meeting, Berrios informed Nieves that he was waiting for Human Resources' response on how to proceed. When Nieves inquired about what, Berrios informed her that several co-workers had requested a work desk change because she had caused discomfort to them. Nieves reminded Berrios that it had been her who had first requested this change to him since May 2024, but he had refused. Notwithstanding, Berrios had authorized Sharon and Alondra, all younger and non-disabled employees to move their desks. Berrios had also authorized Curet, who is non-disabled to relocate her desk. The meeting adjourned, with the understanding that they would later meet on that same afternoon.

62. On that same date, June 28, 2024, Berrios met with Nieves once again at 3:30 pm, and Berrios demanded from her to turn in her Banco Popular Employee Identification Card and informed her that she was being terminated from her from employment. When Nieves inquired

about the reasons for her employment termination, Berrios remained silent, and no reason was given.

63. Following such incident, Nieves suffered a severe anxiety panic attack. She was ordered by Bank personnel to collect her personal belongings and was escorted out by the Bank's security personnel. Berrios' immediate supervisor, Virginia Rodriguez and a representative from the Bank's Human Resources Department were not present when Nieves was unlawfully terminated from her employment.

64. After her unlawful, discriminatory, unjustified and retaliatory termination of employment, other bank employees became aware of Nieves' dismissal and contacted her to inquire as to what had happened to her and as to why she was dismissed. As such, the Bank has violated Nieves' constitutional right to privacy and dignity by revealing to others her employment termination.

65. Plaintiffs Nieves and Pertierra have suffered severe emotional and economic damages resulting from her unlawful, discriminatory and retaliatory termination of employment. On June 28, 2024, Nieves was unlawfully terminated from employment due to her age, gender, disability discrimination and in retaliation because she engaged in statutorily protected activity. Despite requesting reasonable accommodation, Nieves was not provided with any reasonable accommodation due to her health conditions.

### III. FIRST CAUSE OF ACTION
### (TITLE VII: Gender Discrimination, and Retaliation)

66. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them hereto by reference.

67. Banco Popular and its agents have willfully violated Title VII's provisions by engaging in discriminatory employment practices and retaliation against Nieves on account of her gender and because she engaged in statutorily protected activities.

68. Banco Popular and its agents have engaged and permitted Nieves to be subject to gender employment discrimination and retaliation. As such, Banco is liable in compensatory damages against Nieves for its unlawful conduct.

69. Nieves hereby requests back pay, that she be reinstated back to her former employment and that she be compensated for her economical and emotional damages. Plaintiff Nieves demands compensation for these damages in an amount not less than $300,000.00.

70. Nieves prays that judgment be entered on her behalf and against Banco Popular and that she be awarded all relief available to her by law.

## IV. SECOND CAUSE OF ACTION
### (ADEA: Age Discrimination)

71. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

72. Defendant Banco Popular has further violated Plaintiff Nieves' rights under the ADEA due to their engagement in unlawful employment practices against her due to age.

73. Plaintiff Nieves hereby requests backpay, that she be reinstated back to her former employment and that she be compensated for her economic and emotional damages. Plaintiff Nieves demands compensation for these damages in an amount not less than $300,000.00.

74. Nieves prays that judgment be entered on her behalf and against Banco Popular and that she be awarded all relief available to her by law.

## V. THIRD CAUSE OF ACTION
### (ADA: Disability Discrimination, Retaliation and Failure to Accommodate)

75. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

76. Defendant Banco Popular has further violated Plaintiff Nieves' rights under the ADA due to its engagement in unlawful employment practices against her due to her medical disabilities, or because she was perceived as disabled, by failing to provide reasonable accommodation and by retaliating against her because she engaged in statutorily protected activities under the ADA. The Bank failed to engage in the ADA interactive process with Nieves to find reasonable accommodation for her.

77. Plaintiff Nieves hereby requests backpay, that she be reinstated back to her former employment and that she be compensated for her economic and emotional damages. Plaintiff Nieves demands compensation for these damages in an amount of not less than $300,000.00.

78. Nieves prays that judgment be entered on her behalf and against Banco Popular and that she be awarded all relief available to her by law.

## VI. FOURTH CAUSE OF ACTION
### (Violation to Commonwealth of Puerto Rico's Constitution)

79. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

80. Defendant Banco Popular has further violated Plaintiff Nieves' constitutional rights under Article II, Sections 1, 8, and 16 of the Commonwealth of Puerto Rico's Constitution by violating her protected rights to privacy, dignity, reputation, safety and health at the workplace and discriminating against her on the basis of her gender and age.

81. Plaintiff Nieves is entitled to compensatory damages and back pay. Plaintiff Nieves suffered considerable economic and personal damages as a result of Defendant Banco Popular's willful conduct. Plaintiff Nieves demands compensation for these damages in an amount not less than $300,000.00.

## VII.  FIFTH CAUSE OF ACTION
### (Violation to Puerto Rico Laws Nos. 115, 100, 69, 44 and Arts. 1536, 1540 of Puerto Rico's Civil Code)

82. Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

83. Defendants have violated Nieves' rights secured under Puerto Rico Acts Nos. 115, 100, 69, and Articles 1536 and 1540 of Puerto Rico's Civil Code previously cited herein. Defendants have discriminated against Nieves on account of her gender, age, disabilities and further retaliated against her for having engaged in statutorily protected conduct, including but not limited to, requesting reasonable accommodation due to Nieves' impairments.

84. Defendant Banco Popular has also violated Plaintiff Pertierra' rights and have caused him considerable economic and emotional damages. Plaintiff Pertierra is entitled to compensatory damages because of Defendants' unlawful conduct towards his common law wife. Plaintiff Pertierra demands compensation for these damages in an amount not less than $500,000.00.

85. Plaintiff Nieves is also entitled to compensatory damages, back pay and reinstatement.  Plaintiffs have suffered economic and personal emotional damages because of Defendants' unlawful conduct.

86.  Plaintiff Nieves hereby requests backpay, that she be reinstated back to her former employment and that she be compensated for her economic and emotional damages.

Plaintiff Nieves demands compensation for these damages in an amount not less than $300,000.00.

## VIII.  SIXTH CAUSE OF ACTION
### (Violation to Puerto Rico Act 80, Unjustified Dismissal)

87.    Plaintiffs re-allege each preceding allegation as if fully set forth herein and incorporate them by reference hereto.

88.    Defendant Banco Popular has violated Nieves' rights secured under Puerto Rico Act No. 80 due to its unjustified termination of Nieves' employment.  Plaintiff Nieves is entitled to an Act 80 severance payment in the amount of $20,228.93, plus interest.

**WHEREFORE**, premises considered, Plaintiffs pray that this Honorable Court enter Judgment against defendants and grant Plaintiffs the following relief:

(a)    An award of compensatory damages, including but not limited to back pay and front pay and prejudgment interests, of not less than $2,000,000.00;

(b)    An award of double compensatory damages under Acts Nos. 115, 100, 69, and 44;

(c)    An award for costs and reasonable attorney fees;

(d)     An award for punitive damages;

(e)    An award for damages for Pertierra under Articles 1536, 1540 of Puerto Rico's Civil Code, 31 L.P.R.A. §§ 10801, 10805.

(f)     An Act 80 Severance payment in the amount of $20,228.93.

(g)     Reinstatement of Nieves to her prior job position.

(h)    Any other and further relief, which this Honorable Court may deem just, and proper, and

(i)    A trial by jury.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 10th day of March 2025.

                                                              _____
**f/ JOSE G. FAGOT DIAZ**
**DESPACHO LEGAL DORNA-LLOMPART**
**USDC PR No. 204112**
**Attorney for Plaintiff**
1353 Luis Vigoreaux Ave.
PMB 805
Guaynabo, PR  00966
Tel: (787) 413-0672
Tel:(787) 367-8702
email: mdorna@icloud.com
jgf@fagot-law.com
josegabrielemilio@gmail.com